# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JOSEPH TAYLOR<br>   *Plaintiff*,<br>v.<br><br>WEXFORD HEALTH SOURCES, INCORPORATED, WILLIAM K. MARSHALL III, in his official capacity as Commissioner of the West Virginia Division of Corrections and Rehabilitation, and WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION,<br>   *Defendants*. | Case No. 2:23-cv-00475 |

## DECLARATION OF JESSICA MCCOLLEY, D.O.

Pursuant to 28 U.S.C. § 1746, I, Jessica McColley, declare as follows:

1. I am the Chief Medical Officer ("CMO") of the Cabin Creek Health Systems which is based in Charleston, West Virgina. I also direct the four Comprehensive Addiction Recovery Programs ("CARP") within the Cabin Creek Health System.
2. I received my medical degree from the West Virigna School of Osteopathic Medicine in 2009.
3. I became board certified in family medicine in 2012 and have been practicing since then.
4. To serve patients with addiction needs, I took the SAMHSA X-waiver required training and have also participated in multiple continuing medical education courses focused on addiction.
5. Medications for opioid use disorder ("MOUD") is the standard of care for opioid use disorder ("OUD").
6. Based on my years practicing medicine, people being treated with buprenorphine (including suboxone) or methadone, which are the most effective versions of MOUD, are forcibly withdrawn from these medicines upon incarceration in all jails and state prisons in West Virginia unless they are pregnant.
7. Forced and abrupt withdrawal, or detoxification, from MOUD is very dangerous, medically inadvisable, and violates the standard of care.
8. Forced withdrawal causes patients painful physical and mental withdrawal symptoms, interrupts and threatens their OUD treatment, and dramatically elevates their risk of relapse and overdose.
9. If withdrawal from MOUD must occur because of a medical reason, the taper should be done slowly over many months or even years.
10. For all my patients who were forced off their MOUD when incarcerated in West Virginia, nearly 100% of them were never provided buprenorphine (including suboxone)

or methadone by a jail or state prison after the forced withdrawal even though they had valid prescriptions prior to incarceration. The jails and state prisons also did not initiate these medicines to incarcerated people who needed or would benefit from them.

11. No jail or prison medical provider should have a policy or practice of forced withdrawal from buprenorphine (including suboxone) or methadone. Doing so violates the medical standard of care and is cruel and dangerous to the patient.
12. These jails and prisons should also be providing buprenorphine (including suboxone) or methadone to patients who would benefit. This is the medical standard of care.
13. Methadone, buprenorphine, and naltrexone are the three medicines used to treat OUD. These medicines are not interchangeable and what works well for one patient may not for another.
14. In addition to being the CMO of the Cabin Creek Health Systems and director of CARP, as of June 6, 2023, I took over direct care of CARP patients in Cabin Creek's Clendenin medical office.
15. Joseph Taylor is my patient in the Clendenin office.
16. Mr. Taylor has OUD. He is currently prescribed twice daily suboxone doses of 8 mg, (16mg per day). This is the current maximum dose that can be prescribed without prior authorization. This high dose reflects the severity of his OUD.
17. The Clendenin clinic has been providing Mr. Taylor with suboxone since April 5, 2022. The image below shows his suboxone prescription current at of the date of this affidavit.



18. Mr. Taylor has been progressing well in his recovery from OUD because of his suboxone treatment. He is working and supporting his wife and their children and wants to continue taking suboxone.
19. Forced withdrawal from his suboxone treatment is medically contraindicated.

20. If a jail or prison forces Mr. Taylor off his suboxone when he is incarcerated next month, he will experience severe and extended withdrawal symptoms. This will begin within 12 to 24 hours of any interruption in his dosing.
21. Discontinuing his suboxone treatment will also place him at great risk of relapse and overdose and threatens his longterm recovery from OUD.
22. Therefore, it is very important that Mr. Taylor be allowed to continue his daily suboxone treatment without interruption during his incarceration.

_____
Jessica McColley, D.O.

Dated: June 21, 2023
Clendenin, West Virginia