## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

JOSEPH TAYLOR

      *Plaintiff*,

  v.

WEXFORD HEALTH SOURCES, INCORPORATED,
and WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION,

      *Defendants*.

Civil Action No. 2:23cv00475
Honorable Irene C. Berger

## PLAINTIFF'S OPPOSITION TO DEFENDANT WVDCR'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

    Plaintiff Joseph Taylor, through his attorneys, hereby opposes the West Virginia Division

of Corrections and Rehabilitation's Motion to Dismiss his Amended Complaint (Dkt. 47), stating

as follows:

### Introduction

    Plaintiff's Amended Complaint alleges that the West Virginia Division of Corrections and

Rehabilitation ("WVDCR") and Wexford Health Sources, Inc., ("Wexford") (collectively the

"Defendants") forced him to suffer weeks of a painful and dangerous forced detoxification from

his medication for opioid use disorder ("MOUD") because of animus toward people with opioid

use disorder ("OUD") and this life saving medicine, in violation of Plaintiff's federal and

constitutional rights. Specifically, Plaintiff alleged three causes of action against the Defendants

for their repeated refusal to provide him his doctor prescribed MOUD during his incarceration at

the Central Regional Jail ("CRJ") from January through March 2023: (1) an Americans with

Disabilities Act ("ADA") claim against the WVDCR; (2) a Rehabilitation Act ("RA") claim against the WVDCR; and (3) a Fourteenth Amendment violation against Wexford.

WVDCR moved to dismiss Plaintiff's claims under the ADA and RA, arguing that neither statute allows lawsuits for inadequate medical care. (Dkt. 47). In making this argument, the WVDCR ignored the actual allegations in Plaintiff's Amended Complaint relevant to the claims against them. Specifically, Plaintiff alleged that his forced detoxification and Defendants' repeated refusal to provide Plaintiff with MOUD was the result of discrimination and stigma toward people with this specific disability. Courts regularly hold that the ADA "prohibit[s] discrimination *because of a disability*, not inadequate treatment *for* a disability" *Goodman v. Johnson,* 524 F. App'x 887, 890 (4th Cir. 2013) (emphasis added).

The Fourth Circuit "interprets the ADA and RA in lockstep." *Basta v. Novant Health Inc.,* 56 F.4th 307, 316 (4th Cir. 2022). Here, Plaintiff repeatedly alleged the former type of claim—that the Defendants denied him essential medical services *because of his disability*, which is precisely the type of claim that the ADA and the RA were enacted to address. The WVDCR's partial motion to dismiss should accordingly be denied.

### Statement of Facts

Opioid use disorder is a brain disorder that rewires brain for addiction. (Am. Compl., Dkt. 36, ¶ 10.) MOUD is the only effective medical treatment for this chronic brain disease. (*Id*., ¶ 11). Numerous studies have shown that MOUD access in correctional facilities reduces overdose deaths, opioid use, and criminal recidivism rates, and increases the likelihood of continued addiction treatment. (*Id*., ¶ 112). This medicine is listed by the World Health Organization as "essential." (*Id*., ¶ 35).

Joseph Taylor has struggled with opioid addiction for nearly half his life. (*Id*., ¶ 1). He is diagnosed with Opioid Use Disorder and successfully addresses this chronic brain disease with MOUD. (*Id*., ¶ 1). Beginning in April 2022, Mr. Taylor treated his OUD with Suboxone, a version of MOUD, under the supervision of medical staff at the Cabin Creek Health Center in Clendenin, West Virginia. (*Id*., ¶ 2).

On January 1, 2023, Mr. Taylor was incarcerated at CRJ. (*Id*., ¶ 3). Immediately upon entering the jail, he reported to intake staff that he was in withdrawal from Suboxone prescribed by Cabin Creek Health Center in Clendenin. (*Id*., ¶ 4). His need for Suboxone was obvious. Medical staff noted on his intake forms that he was suffering from Suboxone withdrawal prescribed by Cabin Creek Health. (*Id*.). No one at the CRJ called Cabin Creek Health in Clendenin to confirm Mr. Taylor's Suboxone prescription during the months he was detained there. Medical staff did, however, confirm other prescriptions for Mr. Taylor at Cabin Creek Health and provided these medicines to him.  (*Id*., ¶ 41).

Wexford is the for-profit medical provider for all regional jails and state prisons in West Virginia, including CRJ. (*Id*., ¶ 4).  WVDCR is the state agency responsible for all regional jails and state prisons in West Virginia. (*Id*.). Pursuant to their shared policy and practice of forced detoxification, which only applies to people in jails and prisons with MOUD needs, (*Id*., ¶ 54), Wexford and WVDCR refused to provide Mr. Taylor his Suboxone. (*Id*., ¶ 4). Wexford and WVDCR did so despite knowing, as they acknowledge in their medical services agreement, that MOUD "reduces recidivism, illegal drug overdose deaths, and infectious disease transmission" both inside and outside correctional facilities. (*Id*., ¶ 58).

Mr. Taylor was incarcerated at the CRJ from January 1, 2023, through March 9, 2023. (*Id*., ¶ 3).  He made repeated requests for his Suboxone (*Id*., ¶ 42). Wexford and WVDCR's refusal to

provide him Suboxone or another version of MOUD, caused Mr. Taylor to suffer weeks of intense physical and mental anguish and the return of his dreaded opioid cravings. (*Id*., ¶ 5). He experienced withdrawal symptoms from the first day he was incarcerated, including heart palpitations, muscle spasms throughout his whole body, severe pain in his neck and upper body, tremors, anxiety, constant diarrhea, shakes, insomnia, and hallucinations. (*Id*., ¶ 44). Worst of all, his dreaded opioid cravings returned. (*Id*., ¶ 45). He laid awake at night thinking of heroin. He "could taste it in [his] mouth." (*Id*.). He relapsed immediately upon release from detention. (*Id*., ¶ 5). He is lucky to be alive today.  (*Id*.).

On July 7, 2023, Mr. Taylor filed a complaint seeking damages for the pain and suffering the Defendants caused by denying him Suboxone during this incarceration. On September 5, 2023, he filed an Amended Complaint seeking redress under the Americans with Disabilities Act, the Rehabilitation Act, and the Fourteenth Amendment to the United States Constitution. WVDCR filed a motion to dismiss on September 19, 2023.

## Standard of Review

Defendant WVDCR moved to dismiss Mr. Taylor's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive the motion, a complaint . . . must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, (2007). "[A] judge must accept as true all of the factual allegations contained in the complaint" and "construe them in the light most favorable to the plaintiff."  *E.I. du Pont de Nemours & Co.,* 637 F.3d at 440 (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).

Mr. Taylor pleaded facts sufficient to state a claim that is plausible on its face and WVDCR's motion to dismiss should therefore be dismissed.

**Argument**

**A.  Mr. Taylor adequately pleaded a claim under the Americans with Disabilities Act for discrimination because of his disability.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006). Title II of the ADA applies to state inmates. *Pennsylvania. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

To bring a claim under Title II of the ADA for discrimination based on disability, a plaintiff must allege "(1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020). With regard to the benefit provided by the public entity, courts have long held that incarcerated people "benefit" from the various activities, services, and programs available in correctional facilities, including, among others, rehabilitative programs, and medical services. *Yeskey*, 524 U.S. at 210.

Mr. Taylor sufficiently pleaded the three elements required for a discrimination claim under Title II of the ADA. Specifically, he alleged that while incarcerated at the CRJ from January through March 2023, he was a person with a disability (opioid use disorder) (Am Compl., Dkt. 36, ¶ 1); that he was otherwise qualified to receive the benefits provided by the Defendants (medical services) (*Id.*, ¶ 3); and that he was denied the benefit of these services (being treated with Suboxone) because of discrimination against his disability (*Id.*, ¶ 4).

5

Importantly, in its motion to dismiss, the WVDCR does not dispute that Plaintiff pleaded that (1) he had a disability while detained at the CRJ; (2) he was "otherwise qualified" to receive the benefits of the public entity, i.e., he was entitled to healthcare while incarcerated at CRJ; and (3) the Defendants forced him through a painful detoxification and denied him Suboxone while incarcerated at CRJ from January 2023 until March 2023. (Dkt. 47 at 5.) Instead, the WVDCR, in conclusory fashion, mischaracterizes Plaintiff's claim as a simple allegation of denial of medical care, without ever so much as acknowledging Plaintiff's repeated allegations regarding discrimination. But taking Plaintiff's allegations in the Amended Complaint as a whole, as this Court must, it is clear that Plaintiff has alleged a claim beyond simple denial of medical care.

The WVDCR misread Mr. Taylor's complaint by failing to acknowledge his pleadings which directly alleged discrimination. Courts in the Fourth Circuit have held that a plaintiff may not bring a claim under Title II of the ADA based on a denial of medical care needed to treat a disability. *Mondowney v. Balt. Cty. Det. Ctr.*, 2019 WL 3239003, at *21 (D. Md. July 18, 2019). The calculus is changed, however, where the Plaintiff alleges that the reason for the denial of medical treatment is discriminatory, as opposed to incompetence or other non-discriminatory reasons. Courts that have considered this important distinction before have recognized that such claims under the ADA and RA are cognizable:

> This brings us to the principle issue raised in the motion—whether Ms. Cox's ADA and RA claims are for inadequate medical treatment. "Improper medical treatment claims may not be brought under the ADA or RA." *A.H. v. St. Louis County, Missouri*, 891 F.3d 721, 729 (8th Cir. 2018). **However, "[c]laims of inadequate medical treatment for a disability are distinguishable from claims that a prisoner was denied access to medical services because of his disability."** *Postawko v. Missouri Dep't of Corr.*, No. 16-4219-NKL, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017); *see also McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58–59 (D. Me. 1999) (denying defendant's motion for summary judgment on plaintiff's ADA claim where the record before the Court showed that the jail "has one policy for detainees taking HIV medication and one for detainees on medication for maladies other than HIV"); *cf. Bryant v. Madigan*, 84 F.3d 246, 249

(7th Cir. 1996) (holding that ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" where "[n]o discrimination is alleged" and plaintiff "was not treated worse because he was disabled"). While the former type of claim is not cognizable under the ADA and RA, the latter is.

*Cox v. Callaway Cnty. Sheriff's Dep't*, No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *2-3 (W.D. Mo. Mar. 5, 2019) (emphasis added).

Likewise, courts in the Fourth Circuit have recognized that "[c]ourts routinely dismissI ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Gordon v. Tygart Valley Reg'l Jail*, No. 3:12CV34, 2013 WL 786480, at *11 (N.D.W. Va. Feb. 4, 2013), *report and recommendation adopted,* No. 3:12-CV-34, 2013 WL 786471 (N.D.W. Va. Mar. 1, 2013) (citing *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998)). "By contrast, a court might not dismiss a suit by [a] disabled prisoner if it alleges that he or she has been denied services that might have been provided to other prisoners." *Gordan*, 2013 WL 786480, at *12 (citing *McNally v. Prison Health Servs.,* 46F.Supp.2d 49, 58-69 (D.Me.1999)).

While the WVDCR characterizes Plaintiff's claims as mere complaints about adequate access to treatment, Mr. Taylor's Amended Complaint indicates otherwise. Specifically, Mr. Taylor pleaded that the Defendants denied him—and many other people in their custody and care—the life-saving opioid addiction medicine they need because of stigma and negative stereotypes associated with their disability. (Am. Compl. ¶¶ 15, 53). To be clear, Mr. Taylor repeatedly alleged that the Defendants did so because of stigma against people with substance use disorders and the treatments they require. (*Id.*, ¶ 54). The WVDCR omits all mention of these claims of discrimination in their motion to dismiss, wrongly concluding instead that "Plaintiff is

alleging his disability is his opioid use disorder and that the Defendant failed to provide him access to medical and mental health services. That is the entire basis for this claim." (Dkt. 47, 5).

For example, WVDCR overlooks the following allegations of discrimination:

- "Despite the scientific consensus that MOUD is essential to treat OUD, decades of entrenched stigma and cost concerns continue to serve as systemic barriers to this life-saving treatment." (Am Compl. Dkt. 36, ¶ 4).

- "Trafficking in this stigma, and financially benefitting by not providing this medical care, the Defendants regularly force incarcerated people in West Virginia with OUD, including those already being treated with MOUD, into a painful and medically dangerous detoxification program and regularly deny this essential medicine to those who would benefit." (*Id.*, ¶ 5).

- "Despite Mr. Taylor's known disability, the WVDCR failed to reasonably accommodate his disability and discriminated against him, as described above. As a result of the Defendants' conduct, Mr. Taylor suffered injuries, including pain and suffering." (*Id.*, ¶ 24).

- The Defendants' "practice of forced detoxification specifically targets individuals with OUD." (*Id.*, ¶ 54).

- The Defendants "do not have any similar forced detoxification policies that apply to individuals with mental health disabilities, or physical disabilities such as diabetes or high blood pressure." (*Id.*).

Furthermore, the cases WVDCR cites in support of its motion to dismiss are not applicable here because none alleged, as Mr. Taylor does, that the denial of essential medical care was done for discriminatory reasons. In *Bryant v. Madigan*, for example, the court dismissed the ADA claim because, unlike here, "[n]o discrimination is alleged. . ." 84 F.3d 246, 249 (7th Cir. 1996). Likewise, the district court's decision in *Mondowney v. Baltimore County Detention Center.*, No. CV ELH-17-1538, 2019 U.S. Dist. LEXIS 119566, at *59 (D. Md. July 18, 2019), did not involve pleadings alleging that the jail's denial of medical care was driven by discrimination. Rather, the court submissions made clear that the correctional staff took numerous steps to accommodate the plaintiff's disability. *Id.* The *Mondowney* case is clearly distinguishable from Mr. Taylor's

situation, in which Mr. Taylor plead discrimination and that he was not afforded any accommodations for his disability. (*See* Am Compl., Dkt. 36, ¶¶ 4, 124, 130).

In short, the WVDCR's motion to dismiss asks this Court to ignore Mr. Taylor's many allegations that the Defendants repeatedly refused to provide him the opioid addiction medicine that they knew he needed and had requested *because of their discrimination against people with addiction* ("decades of entrenched stigma", "trafficking in this stigma", "failed to reasonably accommodate his disability and discriminated against him", "specifically targets", and "do not have any similar [] policies that apply [to other] disabilities"). Plaintiff's claim against the WVDCR under the ADA is accordingly sufficient under Rule 8 and WVDCR's motion to the contrary should be denied.

### B. Mr. Taylor adequately pleaded a claim under the Rehabilitation Act for discrimination based on his disability.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a claim of discrimination under the Rehabilitation Act, a plaintiff must show: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).

Apart from the "federal funding requirement" of the Rehabilitation Act, the ADA is "similar in substance to the Rehabilitation Act, and cases interpreting either are applicable and interchangeable." *Cox v. Callaway Cnty. Sheriff's Dep't*, No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *2 (W.D. Mo. Mar. 5, 2019) (citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir.

1998) (quotation marks and citation omitted). The Fourth Circuit "interprets the ADA and RA in lockstep." *Basta v. Novant Health Inc.,* 56 F.4th 307, 316 (4th Cir. 2022).

As discussed primarily in Section IV.A.*, supra*, Mr. Taylor sufficiently alleged the three necessary elements required for a discrimination claim under both the ADA and RA. Again, Mr. Taylor has pleaded that while incarcerated at the CRJ from January through March 2023, he (1) was a person with a disability (opioid use disorder) (Am Compl. Dkt. 36, ¶ 1); (2) was otherwise qualified to receive the benefits provided by the Defendants to all people at Central Regional Jail (medical services) (*Id.*, ¶ 3); and (3) was denied the benefit of those services (i.e., being treated with Suboxone) because of discriminatory animus toward people with opioid addiction.  (*Id.*, ¶ 4). Mr. Taylor also alleged that the WVDCR receives federal funding. (*Id.*, ¶ 129).

The WVDCR does not dispute that Mr. Taylor is a person with a disability and that he was forced into a painful withdrawal from Suboxone during the weeks he was incarcerated at the CRJ. Rather, the WVDCR claims that the Rehabilitation Act is not applicable because Mr. Taylor is (allegedly) only asserting a claim for the denial of medical care, which is not permitted under the statute. (Dkt. 47, 7). As previously discussed, this argument ignores Mr. Taylor's repeated and specific claims that the Defendants denied him this medically necessary care *because of his disability*. *See Cox,* No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *2-3. The WVDCR's Rehabilitation Act argument again mischaracterizes the language of his complaint and again misapplies case law indicating that a plaintiff may not receive relief under the ADA and RA for inadequate medical care. (Dkt. 47, 7). That is not the argument Plaintiff is making. For the reasons stated in the discussion of his ADA claims, Defendant's RA argument should be rejected.

In support of its motion to dismiss his RA claims, WVDCR cites cases that are distinguishable from what happened to Mr. Taylor and are not relevant to the express

discrimination alleged by Mr. Taylor. The WVDCR relies on *Church Ekklasia Sozo Inc.* v. *CVS Health Corp.,* for example, where the district court held that "Plaintiffs' allegations expressly refute any discriminatory motive or action by CVS by citing the stated reasons why an unidentified pharmacist allegedly refused to fill Doe's prescription for Soboxone [sic]. None of these reasons relate to Doe's alleged disability status." 2022 WL 1572732, at *7 (W.D.N.C. Feb. 25, 2022).  In fact, the court expressly noted that the plaintiff in *Church Ekklasia Sozo Inc.*, unlike here, "[did] not allege CVS singled her out for disparate treatment," and "was not denied a benefit 'solely on the basis' of her disability." *Id.* at *5, 7. Rather, the pharmacy denied her Suboxone because of concerns that she had improperly obtained the prescription. *Id.* at *1.

WVDCR's reliance on *Cushing v. Moore*, 970 F.2d 1103 (2d Cir. 1992), is also misplaced. That decision involved non-incarcerated individuals who were denied take-home medication from a methadone clinic because they were unemployed (not because of any alleged discrimination) and because they were not "otherwise qualified" for the services of the methadone clinic. *Id.* at 1108-09. In contrast, Mr. Taylor alleges the Defendants discriminated against him by denying him MOUD and that he was otherwise qualified for the Defendants' health services. In fact, he was provided medical care for his other medical conditions separate from his OUD. (Am. Compl., Dkt. 36, ¶ 41). It is only the treatment for his OUD that was denied, and Plaintiff repeatedly alleged that this denial was because of the Defendants' policy and practice of forced detoxification, which specifically targeted and discriminated against people with substance use disorders.

Defendants also cite to *Mascetti v. Zozulin*, a case involving a plaintiff whose alleged disability "is not named or described anywhere in the complaint." No. 3:09-CV-963(PCD), 2010 WL 1644572, at *1 (D. Conn. Apr. 20, 2010). The court held that the plaintiff's RA argument was deficient for many reasons, including that she was not "otherwise qualified" for the medical

treatment she was denied. *Id.* at *3. Again, that is distinct from Mr. Taylor's argument, because he was otherwise qualified to receive medical care from CRJ to treat his opioid use disorder and because he repeatedly described his disability in detail, linking his brain disorder to the discriminatory actions that were taken against him.

Finally, the WVDCR's reference to *Mathis* v. *GEO Group. Inc.* is not relevant since that case, unlike Mr. Taylor's, involved no allegation of the "purposeful discrimination that the Rehabilitation Act prohibits." No. 2:08-CT-21-D, 2009 U.S. Dist. LEXIS 132301, at *14 (E.D.N.C. Nov. 9, 2009). Mr. Taylor is not claiming inadequate medical care under the Rehabilitation Act, but rather purposeful discrimination of health services that he is qualified to receive—specifically the forced detoxification from his medication, which the Defendants do not require of anyone else with medical needs at CRJ.

### C. Courts regularly distinguish between claims of inadequate medical care which are not allowed under the ADA and RA, and claims of discriminatory medical care, which are permitted.

Mr. Taylor does not allege inadequate medical care. He claims *discriminatory* medical care because of the Defendants' repeated denial of MOUD which is result of their animus and stigma toward those struggling with drug addiction. Multiple courts have held that there is a distinction between claims of negligent and/or inadequate medical care—which are not litigable under the ADA or RA—and claims of discriminatory medical care, which are. *See, e.g.*, *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 286-87 (1st Cir. 2006) (holding that denying access to medications is not medical judgment or negligence, but instead constitutes an outright denial of medical services); *McPherson v. City of Dauphin*, 2020 U.S. Dist. LEXIS 50988, at *10-11 (M.D. Penn., Mar. 24, 2020) (drawing a distinction between claims under the ADA and RA that allege inadequate medical treatment and those that allege denial of access to prescription medications); *McKissick v.*

*City of York*, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa., Mar. 19, 2010) (denying motion to dismiss in an ADA lawsuit because prison officials refused to provide detainee with his prescribed medications, including methadone). *See also Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 159-60 (D. Me. 2019), *aff'd*, 922 F.3d 41 (1st Cir. 2019) ("The Defendants' out-of-hand, unjustified denial of the Plaintiff's request for her prescribed, necessary [opioid addiction] medication—and the general practice that precipitated that denial—is so unreasonable as to raise an inference that the Defendants denied the Plaintiff's request because of her disability"); *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 47 (D. Mass. 2018) (granting plaintiff's motion for a preliminary injunction in an ADA lawsuit because "[a]bsent medical or individualized security considerations underlying the decision to deny access to medically necessary [MOUD] treatment, Defendants' policy as applied to Pesce is either 'arbitrary or capricious-as to imply that it was pretext for some discriminatory motive' or 'discriminatory on its face.'")

Mr. Taylor's clear and repeated allegations of discriminatory medical treatment arise from a circumstance that multiple courts have found sufficient to allege an ADA and RA violation: denial of prescription medications. "Access to prescription medications is a part of a prison's medical services and thus is one of the 'services, programs, or activities,' covered by the ADA." *Kiman*, 451 F.3d at 286-87 (citing *U.S. v. Georgia*, 546 U.S. 151, 157 (2006)). Here, Mr. Taylor alleged that (1) the Defendants forced him to suffer a painful and medically unjustifiable detoxification from the prescription medication (Suboxone) that he took for his disability (OUD); and (2) they did not require individuals taking other prescription medication for other disabilities and medical conditions to go through a similar forced detoxification. (*See* Am. Compl. at ¶ 54). Plaintiff's denial of prescription MOUD was not, therefore, a medical judgment, but rather an outright denial of medical services motivated by discriminatory animus that violated the ADA and

RA. *See Kiman*, 451 F.3d at 287; *McNally v. Prison Health Services*, 46 F. Supp. 2d 49, 58-59 (D. Me., April. 27, 1999) (finding plaintiff stated an ADA claim when he alleged that "Cumberland County Jail discriminated against Plaintiff because of his HIV-positive status, not by providing him with inadequate care, but by denying him immediate access to prescribed medications, a service provided to detainees in need of prescriptions for other illnesses); *White v. Fla. Dep't of Corr.*, 2019 WL 13087818, at *3 (N.D. Fla. Oct. 10, 2019) (denying a motion to dismiss in an ADA lawsuit because the "Plaintiff alleges discriminatory access to the prison's services because he alleges a policy under which FDC does not provide inmates with chronic HCV lifesaving medications for their disability while inmates with other disabilities do have access to lifesaving medications.").[1]

Furthermore, this case is distinguishable from *Baxley v. Jividen*, cited by the WVDCR (Dkt. 47, 4-5), in which the plaintiffs never claimed, as the district court notes, "intentional discrimination." 508 F. Supp. 3d 28, 60 (S.D.W. Va. 2020). Instead, the "acts (or omissions) that harmed the Plaintiffs in each of these allegations were not failures to accommodate the individual Plaintiffs' disabilities but the Defendant and WVDCR's failure to appropriately treat their medical conditions." *Id.* at 61-62. The *Baxley* court then made clear that if the plaintiffs had alleged facts suggesting that this denial of accommodations for their medical disabilities was driven in part by discrimination, as the plaintiff Donna Wells-Wright had successfully done, the ruling could have been different for all other plaintiffs. *Id.* at 63 ("Plaintiff Donna Wells-Wright has adequately stated a claim under the ADA. As noted above, a plaintiff can establish a prima facie case under Title II of the ADA by showing (1) she has a disability; (2) she is "otherwise qualified to receive

---

[1] *See also Lonergan v. Fla. Dep't of Corr.*, 623 Fed. Appx. 990, 994 (11th Cir. 2015) (holding that the failure of the prison to give plaintiff the treatment prescribed by his dermatologist was sufficient for plaintiff to plead a prima facie ADA claim).

the benefits of a public service, program, or activity"; and (3) she was "denied the benefits of such service, program, or activity, or otherwise discriminated against, *on the basis of their disability*." (emphasis added). To highlight this distinction—between allegations of inadequate care versus discriminatory care—the district court in *Baxley* expressly noted that the "supporting regulations to the ADA make clear that correctional facilities have an affirmative duty to ensure that inmates and detainees are not 'subjected to discrimination.'" *Id*. at 60, n. 4, citing 28 C.F.R. § 35.152(b)(1). That is exactly what Mr. Taylor alleges in his pleading—that denial of treatment (i.e., prescription medication) for Mr. Taylor's opioid addiction was driven by discrimination—and why these decisions are not applicable.

In sum,  the WVDCR (1) knew that Mr. Taylor was suffering from a painful withdrawal from his opioid addiction medicine, (2) were aware of his MOUD needs and his repeated requests for Suboxone, (3) pursuant to their medical policy and practice, forced him into a dangerous detoxification and refused him this medicine because of stigma and negative stereotypes, (4) thereby treating him differently than individuals with any other disease or illness. That is sufficient to plead a claim under the ADA and the RA. This Court should accordingly deny Defendant WVDCR's motion to dismiss.

### D. Contrary to WVDCR's claims, Mr. Taylor did allege that he struggled with daily activities, was discriminated against, was denied health services because of his opioid use disorder, and that the Defendant refused to accommodate his disability.

WVDCR incorrectly claims that the Plaintiff failed to allege that he struggled with daily activities, was discriminated against, was barred from jail programs, and was not afforded a reasonable accommodation for his disability. (Dkt. 47 at 9). To the contrary, Mr. Taylor pleaded facts alleging all of the above.

15

He alleges that he suffered weeks of excruciating pain and suffering from not receiving medicine required to treat his opioid use disorder and that his drug cravings returned so powerfully that he laid awake at night thinking of heroin. (Am. Compl., Dkt. 36, ¶¶ 44-45).[2]  He claims that he was discriminated against by the Defendants' forced detoxification policy and practice which specifically targets and denies only people with substance use disorders the medicines they desperately need.[3] (*Id.*, ¶ 54). He asserts that the Defendants knew about his Suboxone withdrawal, which was indicated on Wexford's medical intake forms, and that he made repeated requests for this medicine.[4] (*Id.*, ¶ 46). Lastly, he alleges the WVDCR refused to accommodate his disability and that doing so would have been easy.[5] (*Id.*, ¶ 124).

Defendant's reading of the Amended Complaint simply fails to acknowledge numerous factual pleadings indicating his debilitating and painful withdrawal symptoms, which lasted for weeks, and predictability resulted in him relapsing and nearly overdosing after release from CRJ;

---

[2] "Mr. Taylor experienced withdrawal symptoms from the first day he was incarcerated, including heart palpitations, muscle spasms throughout his whole body, severe pain in his neck and upper body, tremors, anxiety, constant diarrhea, shakes, insomnia, and hallucinations. Worst of all, his dreaded opioid cravings returned. He laid awake at night thinking of heroin. He 'could taste it in [his] mouth.'" (Am. Compl., Dkt. 36, ¶¶ 44-45).

[3] "The practice of forced detoxification from MOUD specifically targets individuals with OUD. Upon information and belief, Defendants do not have any similar forced detoxification policies that apply to individuals with mental health disabilities, or physical disabilities such as diabetes or high blood pressure." (*Id.*, ¶ 54).

[4] "Mr. Taylor asked for his Suboxone during intake and multiple times during the first few weeks he was experiencing withdrawal. Despite his repeated requests, he was not given Suboxone or any other form of MOUD." (*Id.*, ¶ 46).

[5] "Despite Mr. Taylor's known disability, the WVDCR failed to reasonably accommodate his disability and discriminated against him, as described above." (*Id.*, ¶ 124). "In a hearing before the Honorable Irene C. Berger on July 10, 2023, Defendant Wexford agreed to provide Mr. Taylor his Suboxone during his current incarceration. Mr. Taylor is currently receiving Suboxone pursuant to markings on his medical forms that this medicine was court ordered." (*Id.*, ¶ 8).

his exclusion from health service programs at CRJ due to the Defendants' discriminatory forced detoxification policy and practice; and a failure to accommodate his known disability, for which he repeatedly requested medicine and which would not have been difficult to provide as demonstrated by Wexford and WVDCR providing Mr. Taylor his Suboxone following the July 10, 2023 hearing.

### Conclusion

WHEREFORE, for the reasons stated herein, Mr. Taylor respectfully requests this Honorable Court deny Defendant's Motion to Dismiss.

**Respectfully submitted,**
**JOSEPH TAYLOR,**
**Plaintiff, by and through Counsel,**

/s/ Lydia C. Milnes
Lydia C. Milnes (WVSB #14158)
Lesley M. Nash (WVSB #10598)
Mountain State Justice, Inc.
1029 University Ave., Ste, 101
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 344-3145
lydia@msjlaw.org
lesley@msjlaw.org

Sarah Grady (IL Bar No. 6312933)
David Howard Sinkman (NY Bar No. 4684981)
Kaplan & Grady LLC
1953 N. Clybourn Ave., Ste. 274
Chicago, IL 60614
Phone: (312) 852-2184
Facsimile: (312) 626-6715
sarah@kaplangrady.com
sinkman@kaplangrady.com

Amelia Caramadre (MA Bar No. 710230)
The Action Lab
Center for Health Policy and Law
Northeastern University School of Law
360 Huntington Ave – 120KN

Boston, MA 02115
a.caramadre@northeastern.edu