IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSEPH TAYLOR,

          Plaintiff,

v.                                          CIVIL ACTION NO.   2:23-cv-00475

WEXFORD HEALTH SOURCES,
INCORPORATED, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 46), *Defendant West Virginia Division of Corrections and Rehabilitation's Memorandum of Law in Support of Motion to Dismiss* (Document 47), the *Plaintiff's Opposition to Defendant WVDCR's Motion to Dismiss the Amended Complaint* (Document 49), and *Defendant West Virginia Division of Corrections and Rehabilitation's Reply to Motion to Dismiss* (Document 51), as well as the Plaintiff's *Amended Complaint* (Document 36). For the reasons stated herein, the Court finds that the motion should be denied.

**FACTUAL ALLEGATIONS**

The Plaintiff, Joseph Taylor, initiated this action with a *Complaint* (Document 1) filed on July 7, 2023. He filed the operative *Amended Complaint* (Document 36) on September 5, 2023.

The Defendants are the West Virginia Department of Corrections and Rehabilitation (WVDCR) and Wexford Health Sources, Inc. (Wexford).

Mr. Taylor, now 30 years old, has suffered from Opioid Use Disorder (OUD) for years. OUD is a progressive brain disorder that causes chemical alteration of the brain, resulting in intense cravings and withdrawal symptoms, among other things. Mr. Taylor became addicted when he was prescribed opioids following a serious car accident and surgery as a teenager. After his doctor stopped prescribing opioids, he began getting pills from friends. As his addiction escalated, he started using heroin. He had no success getting clean until he began receiving suboxone, a Medication for Opioid Use Disorder (MOUD). MOUD is the standard of care for treating OUD, including in a jail or prison setting.[1] Beginning in April 2022, doctors at Cabin Creek Health Center in Clendenin, West Virginia, wrote weekly Suboxone prescriptions for Mr. Taylor. As is common for people with Opioid Use Disorder, he suffered relapses during times of increased stress or gaps in access to treatment but continued to progress in his treatment and recovery. He received his weekly prescription on December 20, 2022, but could not fill his December 29, 2022 prescription.

Mr. Taylor was incarcerated in pretrial detention between January 1, 2023 and March 9, 2023, at Central Regional Jail. Wexford is the medical provider for the WVDCR. He informed jail officials that he was prescribed Suboxone by Cabin Creek Health and had not taken it in two days. Medical staff at the jail completed a form noting that he was experiencing withdrawal from Suboxone and identifying his pharmacy. Instead of confirming his prescription and providing him with Suboxone, "they let his withdrawal worsen, causing Mr. Taylor excruciating mental and

---

1 Multiple types of MOUDs are available, but the complaint indicates that they are not interchangeable, and patients should be maintained on a medication that is effective for them.

2

physical pain and suffering." (Am. Compl. at ¶ 16.) He asked repeatedly during his time in custody but was never given Suboxone while in jail. "Medical staff did, however, confirm other prescriptions for Mr. Taylor at Cabin Creek Health Center and provided these medicines to him." (*Id.* at ¶ 41.)

Because Suboxone has a longer half-life than heroin, "its withdrawal is longer and more intense." (*Id.* at ¶ 43.) "Mr. Taylor experienced withdrawal symptoms from the first day he was incarcerated, including heart palpitations, muscle spasms throughout his whole body, severe pain in his neck and upper body, tremors, anxiety, constant diarrhea, shakes, insomnia, and hallucinations." (*Id.* at ¶ 44.) In addition, without Suboxone, his "opioid cravings returned," and he "laid awake at night thinking of heroin." (*Id.* at ¶ 45.) Jail staff provided him only over-the-counter medications for his physical symptoms. A jail doctor told him something to the effect of "'I don't care who your doctor was, I'm your doctor now and I'm not giving you suboxone.'" (*Id.* at ¶ 47.)

As is common with people with OUD who do not receive MOUD while incarcerated, Mr. Taylor relapsed immediately upon his release and nearly overdosed. He then returned to treatment at Cabin Creek Health and maintained treatment. He returned to custody after his sentencing on July 10, 2023. The Court held a hearing on a motion for a temporary restraining order on that date during which the Defendants agreed to provide him with his prescription medication, and he has been provided Suboxone during this term of incarceration. The medical notes indicate that it is provided pursuant to court order, although the Defendants, without the presentation of evidence and prior to the entry of an order, represented during the TRO hearing that they would continue providing MOUD to individuals with valid prescriptions.

According to the Plaintiff, it is the Defendants' "policy and/or standard practice" to force people in custody into withdrawal and deny access to MOUD, even when they enter custody with a valid prescription, unless they are pregnant. (*Id.* at ¶ 52.) Detoxification is not an accepted form of treatment for OUD, while medications like Suboxone are the recommended standard of care. Forced withdrawal prior to providing MOUD causes suffering and serves no medical purpose. Even when discontinuation of MOUD is appropriate, the standard of care requires gradual tapering. "Numerous medical and law enforcement organizations warn against forced detoxification without the provision of MOUD and the abrupt cessation of MOUD because doing so elevates the risk of relapse, overdose, and death, and is a barrier to treatment and recovery." (*Id.* at ¶ 109.) The Plaintiff alleges that the Defendants maintain their policy of denying Suboxone to inmates because of stigma about OUD and because they financially benefit by denying appropriate treatment.

The Plaintiff asserts the following causes of action: Count One – Violation of Title II of the Americans with Disabilities Act (ADA), as to WVDCR; Count Two – Violation of the Rehabilitation Act, as to WVDCR; and Count Three – Violation of the Fourteenth Amendment of the United States Constitution, as to Wexford. He seeks a declaration that the conduct alleged violated his rights under the ADA, the Rehabilitation Act, and the U.S. Constitution, as well as compensatory and punitive damages and attorneys' fees.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521

F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

5

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The WVDCR urges the Court to find that the Plaintiff has not stated a claim for relief under either the ADA or the Rehabilitation Act. It contends that the ADA claim fails under precedent holding that prisoners cannot state an ADA claim for inadequate medical care. It argues that the entire basis of the Plaintiff's complaint is that the Defendant failed to provide appropriate treatment for his opioid use disorder, and that claim is not cognizable under the ADA. It further argues that the amended complaint does not contain factual allegations "that Plaintiff struggled with daily activities, was discriminated against, was barred from jail programs, or was not afforded reasonable accommodations to account for his disabilities," or that he "requested any type of accommodation for his disability." (Def.'s Mem. at 5.) The WVDCR contends that the Rehabilitation Act likewise does not afford relief for claims of inadequate medical treatment. The WVDCR further contends that the Plaintiff's allegation that the Defendants refused to provide

6

MOUD to any inmates is inconsistent with claims of discrimination. It argues that the amended complaint does not sufficiently allege that the Plaintiff was discriminated against or not provided sufficient accommodations for his disability, and therefore both claims should be dismissed.

In response, the Plaintiff argues that his claims are sufficiently alleged. He contends that the Defendant missed the core point of his allegations: that he was denied Suboxone because WVDCR purposely discriminates against him and others with OUD, not because of incompetence or some other non-discriminatory reason. Mr. Taylor asserts that he adequately stated an ADA claim because he alleged that he has opioid use disorder, which constitutes a disability, that he was otherwise qualified to receive medical services from the Defendants, and that he was denied Suboxone because of discrimination against his disability. Acknowledging that denial of medical care alone does not state an ADA claim, the Plaintiff argues that "the calculus is changed, however, where the Plaintiff alleges that the reason for the denial of medical treatment is discriminatory." (Pl.'s Resp. at 6.) "Mr. Taylor pleaded that the Defendants denied him—and many other people in their custody and care—the life-saving opioid addiction medicine they need because of stigma and negative stereotypes associated with their disability." (*Id.* at 7.) The Plaintiff contends that his allegation that the Defendants refused to provide him with his prescribed Suboxone as part of a practice of discrimination against inmates with OUD is sufficient to state a claim, under both the ADA and the Rehabilitation Act. He notes that the Fourth Circuit has held that the ADA and the Rehabilitation Act are interpreted in lockstep and presents much the same argument in support of his claims under the Rehabilitation Act. He maintains that, while claims based on inadequate medical care fail to state a claim under either the ADA or the Rehabilitation Act, relief is available for claims of discriminatory medical care.

The Fourth Circuit has addressed application of the ADA and Section 504 of the Rehabilitation Act, indicating that both "prohibit discrimination against an individual because of his or her disability." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018). The analysis of the claims is "substantially the same." *Id.*

> To establish a violation of either statute, plaintiffs must prove (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program or activity, or otherwise discriminated against, on the basis of their disability.

*Id.* (quoting *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016)). "The two statutes differ only with respect to the third element, causation." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). The ADA requires proof that "the disability was a motivating cause of the exclusion," while the Rehabilitation Act requires that the plaintiff prove "he was excluded solely by reason of his disability." *Id.* at 461-62 (internal punctuation omitted) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999)). A person is "qualified" to receive the benefits or services of a program if she "meets the essential eligibility requirements for participation in a program or activity," "with or without reasonable modifications to rules, policies, or practices." *Halpern*, 669 F.3d at 462 (internal quotation marks omitted).

"[O]piate addiction may qualify as an 'impairment' provided the addict is not currently using drugs." *Start, Inc. v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 569, 576 (D. Md. 2003) (finding proposed methadone clinic had adequately alleged ADA violations for discriminatory application of zoning laws to prevent establishment of clinic). In general, failure to adequately provide for an inmate's medical needs does not violate the ADA where "[n]o discrimination is alleged." *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (unpublished); *Miller v. Hinton*, 288 F.

8

App'x 901, 903 (4th Cir. 2008) (unpublished). However, some courts have distinguished cases alleging denial of access to medical services *because of* an inmate's disability, finding that such cases do state a claim under the ADA and Rehabilitation Act. *See Cox v. Callaway Cnty. Sheriff's Dep't*, No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *2 (W.D. Mo. Mar. 5, 2019) (collecting cases involving failure to provide medical treatment for certain ailments, including mental health disorders and HIV).

The Honorable Robert C. Chambers recently addressed ADA claims involving the provision of medical care within the WVDCR in *Baxley v. Jividen*, 508 F. Supp. 3d 28 (S.D. W. Va. 2020). In a class action case, the Plaintiffs alleged a broad array of deficiencies in the treatment and accommodations provided in light of their diagnosed medical conditions. Judge Chambers found that several of the Plaintiffs' claims "amount to inadequate medical care claims" and could not proceed, explaining that there was no "distinction" between the claims for inadequate medical care brought pursuant to 42 U.S.C. § 1983 and the "claim of deliberate indifference" pursuant to the ADA. *Id.* at 60-61. Judge Chambers noted that the plaintiffs in *Baxley* based their ADA claim "not on intentional discrimination but upon a failure to provide reasonable accommodations to the Plaintiffs, resulting in their exclusion from jail services, program, and activities." *Id.* at 60.

In contrast to *Baxley*, Mr. Taylor alleges intentional discrimination based on his specific disability of opioid use disorder. Opioid use disorder is a qualifying disability for purposes of the ADA and the Rehabilitation Act. The complaint contains sufficient factual allegations regarding the seriousness and impact of OUD both in general and for Mr. Taylor specifically. He alleges that he was receiving Suboxone, a treatment accepted within the medical community that had

9

proven effective for his long-standing opioid use disorder, when he was incarcerated, and that he repeatedly told staff that he was prescribed Suboxone. Although he received his other prescription medications, he was forced into withdrawal rather than being provided Suboxone, a painful, debilitating process that increased his risk of relapse upon his release. In addition to the denial of medical services for his OUD, it can be reasonably inferred that he was unable to participate in programming or access services while experiencing "heart palpitations, muscle spasms throughout his whole body, severe pain in his neck and upper body, tremors, anxiety, constant diarrhea, shakes, insomnia, and hallucinations." (Am. Compl. at ¶ 44.) He alleges that a doctor informed him he would not be given Suboxone, and that it was the Defendants' policy and practice to force inmates with OUD—even those managing the condition with MOUD—into withdrawal, withholding access to effective medications recognized as the standard of care, because of the stigma surrounding addiction. The Plaintiff alleges that MOUDs are treated differently than other prescription medications, and that there is no medical reason for this disparity.

      The Plaintiff will ultimately have the burden of producing evidence and proving that the Defendants deliberately refused to provide MOUD because of discrimination against people suffering from opioid use disorder. At this stage, the Court finds that the allegations in the amended complaint are sufficient to state a claim for violations of the ADA and the Rehabilitation Act.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 46) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 3, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA