UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| JOSEPH TAYLOR<br><br>    *Plaintiff*,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INCORPORATED, and WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION,<br><br>    *Defendants*. | Civil Action No. 2:23cv00475<br>Honorable Irene C. Berger |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## I.    INTRODUCTION

COMES NOW Plaintiff Joseph Taylor, by counsel, in opposition to the Motion for Summary Judgment filed by Defendant West Viriginia Division of Corrections and Rehabilitation ("WVDCR"). Dkt. No. 186. WVDCR argues, contrary to the clear weight of evidence and testimony, that there is no evidence of discrimination against Plaintiff based on his disability; that Plaintiff is not protected under the Americans with Disabilities Act ("ADA") because he was an active/current user of illicit drugs; and that Plaintiff's claims under the Rehabilitation Act ("RA") must be dismissed as a matter of law. In light of the documentary evidence and law that Mr. Taylor presents here and in support his Motion for Summary Judgment against WVDCR at Dkt. No. 189, Mr. Taylor respectfully requests that this Court deny WVDCR's Motion for Summary Judgment.

## II.    STATEMENT OF FACTS

Defendant Wexford and WVDCR each filed motions for Summary Judgment. Dkt. Nos. 182 and 186. Defendants submitted identical facts and exhibits in support of their motions. Plaintiff

1

addresses both with a single fact section, and Plaintiff respectfully refers this Court to the fact section submitted in conjunction with Plaintiff's Response to the Wexford motion for summary judgment (Section II, Pl.'s Resp. to Wexford Summ. J.). Plaintiff further references the facts referenced in his own Motion and Memoranda for Summary Judgement against WVDCR at Dkt. Nos. 188 and 189.

### III.    STANDARD OF REVIEW

The "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if a reasonably jury "could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and should only be granted "where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). In considering a motion for summary judgment, the court is "required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party. In doing so, [the court] must not weigh evidence or make credibility determinations. Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (cleaned up). WVDCR has not met these high bars.

### IV.    ARGUMENT

As set forth in his affirmative motion for summary judgment on his ADA and RA claims, Mr. Taylor has presented sufficient undisputed evidence to support this Court's entry of summary judgment in his favor. But even if this Court were to deny Plaintiff's motion for summary judgment on those claims, and it should not, there can be no dispute that the evidence in this case does not

2

entitle WVDCR to summary judgment on those claims in its favor. Accordingly, WVDCR's motion for summary judgment should be denied.

### A. WVDCR cannot show it is entitled to judgment in its favor on Plaintiff's ADA claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a claim for discrimination under Title II of the ADA, a plaintiff must demonstrate "(1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020).

In his affirmative motion for summary judgment, which Plaintiff incorporates by reference herein, Plaintiff sets forth in detail the evidence supporting each element of this claim. First, Mr. Taylor has a disability under the ADA—Opioid Use Disorder—which substantially limits one of more of his major life activities. *See* 42 U.S.C. § 12102(1) & (2); 28 C.F.R. § 35.108(b)(2); 29 C.F.R. § 1630.2(j)(1)(ii). Second, as a prisoner in the custody of the WVDCR, Mr. Taylor was entitled to the "benefits" provided by WVDCR, in this case, access to medical services for treatment of his diagnosed disability. *See Penns. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Finally, Plaintiff has presented evidence that discrimination was the motivating factor in WVDCR's denial of access to medical treatment for his OUD. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999).

WVDCR contests that (1) it discriminated by denying Mr. Taylor MOUD to treat his OUD, and (2) Mr. Taylor was not entitled to the protections of the ADA because he was an active user

of illicit substances when he was incarcerated in January 2023. WVDCR fails to demonstrate that the record mandates judgment in its favor on either score.

> 1. **WVDCR cannot show it is entitled to summary judgment regarding its discrimination of Mr. Taylor on account of his OUD.**
>
>> a. **WVDCR misstates the standard of proof of an ADA Title II claim.**

WVDCR misapprehends the standard of proof under Title II of the ADA, which requires proof that "the disability was a *motivating* cause of the exclusion [from the benefits of a program]." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2021) (cleaned up).

WVDCR, however, contends Plaintiff must show evidence that WVDCR "deliberately refused" to provide him with his MOUD "because of discrimination," citing dicta in this Court's Memorandum Opinion and Order denying its motion to dismiss. Dkt. 65. In the order, this Court explained "[t]he Plaintiff will ultimately have the burden of producing evidence and proving that the Defendants deliberately refused to provide MOUD because of discrimination against people suffering from opioid use disorder." *Id.* Defendant WVDCR has seized upon that statement as the legal standard that Plaintiff must meet, ignoring the remaining portion of the order which states: "The ADA requires proof that 'the disability was a motivating cause of the exclusion [from the benefits of a program],' while the Rehabilitation Act requires that the plaintiff prove 'he was excluded solely by reason of his disability.'" *Id.* at 8. In addition to the selective reading of the Memorandum Opinion, WVDCR cites the employment discrimination case *Chmura v. Monongalia Health Systems*, which contains a discussion of proof under *Title I* of the ADA, which has different requirements of proof than Title II claims. No. 1:17CV222, 2019 U.S. Dist. LEXIS 134373, at *14 (N.D.W. Va. Aug. 9, 2019). Therefore, WVDCR'S motion for summary judgment fails as a matter of law.

4

b. **WVDCR is liable for Wexford's refusal to treat Mr. Taylor's OUD under the theory of respondeat superior.**

WVDCR attempts to evade all liability for the refusal to provide Mr. Taylor's medication by stating it has no role whatsoever in the medical treatment of Mr. Taylor's OUD, insisting medical care is solely the responsibility of its medical services contractor, Wexford. Dkt. 187 at 7. WVDCR's argument is factually unsupported and fails as a matter of law.

Notably, WVDCR does not contest that Wexford discriminated against Plaintiff and others like him with OUD. To the contrary, there are numerous examples of Wexford's discrimination against Plaintiff by refusing to treat his OUD, in contrast to Wexford's treatment of other medical conditions. Unlike other conditions, like diabetes, Wexford did not refuse to prescribe medications if the incarcerated patient does not have a "current prescription." *See* Section II.B, Pl.'s Resp. to Wexford Summ. J. Likewise, Wexford did not require incarcerated patients to go through forced withdrawal from other medications, as they did for patients with OUD. *Id.* And, perhaps most telling, Wexford did not celebrate the refusal of treatment for patients with other types of disabilities; they only celebrated when such treatment was refused by patients with OUD. *See* Ex. 4 (Sublocade Site Report) at WEX000692-693 (Notes on Wexford report stating that SCRJ "Rcoked [sic] it!!" in August 2022 and "South Central Rocked it again!!" in September 2022 where 35 out of 36 and 61 out of 64 people evaluated for Sublocade refused or were not interested.).

WVDCR instead argues simply that it is not responsible for this discrimination because it was not involved. But that argument overlooks binding precedent to the contrary. The Fourth Circuit and its sister circuits have long held that the doctrine of respondeat superior applies to claims arising under the ADA and RA. In *Rosen v. Montgomery County*, the Fourth Circuit rejected the argument that "there is no respondeat superior liability under the ADA and that the County can only be held for a *policy* of discrimination. Under the ADA and similar statutes, liability may be

5

imposed on a principal for the statutory violations of its agent." *Rosen,* 121 F.3d 154, 157 n.3 (4th Cir. 1997) (cleaned up) (ADA); *see also EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995) (ADA); *Bonner v. Lewis*, 857 F.2d 559, 566-567 (9th Cir. 1988) (Rehabilitation Act)). Public entities are liable under principles of respondeat superior for their employees' violations of the ADA and Rehabilitation Act. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 377 (D. Md. 2011). And in *Estate of Robert Ethan Saylor v. Regal Cinemas Inc.*, the court wrote that "[b]ecause the Fourth Circuit has held that there is respondeat superior liability under Title II of the ADA, the State would be liable for any violation committed by the Deputies regardless of whether Plaintiffs prevail on their failure to train claim." No. CV WMN-13-3089, 2016 WL 4721254, at *16 (D. Md. Sept. 9, 2016), *aff'd sub nom. Est. of Saylor v. Rochford*, 698 F. App'x 72 (4th Cir. 2017); *see also Bane v. Virginia Dep't of Corr.*, No. 7:12-CV-159, 2012 WL 6738274, at *10 (W.D. Va. Dec. 28, 2012) ("Despite the lack of individual liability, the doctrine of respondeat superior applies in the ADA context, so the actions of the individual defendants can serve as the basis for finding VDOC or PSCC in violation of the statute.").

In West Virginia, there is a four-part test to determine whether a particular individual or entity is an agent of another (i.e., engaged in a master-servant relationship) for purposes of respondeat superior: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control." Syl. Pt. 10, *Roof Serv. of Bridgeport, Inc. v. Trent*, 244 W. Va. 482, 486-87, 854 S.E.2d 302, 307 (2020). The fourth factor—the power of control—is a necessary condition. Syl. Pt. 5 *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990). Once a party has established a prima facie case of agency, the burden of establishing any exception, including the independent contractor exception, shifts to the party asserting the exception as a defense to liability. *Zirkle*, 214 W. Va. at 24, 585 S.E.2d at 24. "[R]espondeat

6

superior should be liberally applied in favor of those who invoke it[,]" *Roof Serv. of Bridgeport*, 244 W. Va. at 495, 854 S.E.2d at 315 (quoting *Zirkle*, 214 W.Va. at 22, 585 S.E.2d at 22). And "[i]n a case involving the relationship of independent contractor, although the facts may be undisputed, the issue should be submitted to the jury and not decided by the court as a matter of law, unless the facts are such as would justify but one reasonable inference." Syl., *Hicks v. Southern Ohio Quarries Co.*, 116 W.Va. 748, 182 S.E. 874 (1935).

There can be no question that Wexford is the agent of WVDCR, tasked with implementing health services for incarcerated patients. WVDCR chose Wexford as the recipient of the medical services contract after issuing a request for proposals with specific requirements for the work to be performed. Exhibit 6, Agency Master Agreement, P70-P73. Pursuant to that contract, WVDCR pays compensation to Wexford for its services, and WVDCR retains the right to terminate Wexford for non-compliance with the contract at any time.

### c. WVDCR maintained power of control over Wexford.

The record similarly establishes that WVDCR maintained power of control over Wexford. WVDCR was responsible for ensuring Wexford's compliance with the ADA and RA, and failed to. As an initial matter, WVDCR's medical monitoring team was tasked with oversight of Wexford's implementation of the medical services contract. As explained by Dr. Ayne Amjad, the head of that team, "Wexford is responsible for providing direct care. My role is to provide oversight to their contract, and compliance." Dkt. 194.02, Defs. Ex. 25 (Amjad Dep.) at 26:8-10. Dr. Amjad further explained that nurse surveyors hired by WVDCR use national guidelines "to make sure Wexford is following those basic guidelines for their care in the facilities." *Id.*, 27:8-13.

Moreover, WVDCR testified that "DCR policies always come first, so if they have a policy that's in conflict with our policy, our policy takes precedence, if that answers the question Ex. 2 (Minnix Dep.) at 143. Similarly, in an interrogatory response, Wexford acknowledged DCR's ability to direct aspects of its medical treatment—particularly with regard to MOUD—explaining that Wexford routinely switches patients to Subutex from Suboxone as a result of a directive by WVDCR: "Wexford is following a directive by the WVDCR chose [sic] to go with a mono-product 'Subutex' in crushed form." Ex. 5, (Wex. Reps. to P's Second Set of Req.) No. 41. Wexford's provision of medical care, and lack thereof, lies squarely with WVDCR.

For these reasons, the undisputed record establishes that WVDCR exercised control over Wexford, permitting Plaintiff to sue WVDCR for violations of the ADA and RA based on Wexford's discriminatory conduct.

### d. The independent contractor exception does not apply here.

Plaintiff expects that WVDCR will argue that Wexford is an "independent contractor," eligible for the "independent contractor exception" to respondeat superior under West Virginia law. But that exception is not available to WVDCR in this case. Merely "proving that the work was being done under a contract does not constitute the defense of independent contractor." *Zirkle v. Winkler*, 214 W. Va. 19, 23, 585 S.E.2d 19, 23 (2003) (cleaned up). Rather, as the Supreme Court of Appeals of West Virginia has explained, "the rule does not apply to relieve one who has employed an independent contractor from liability for the breach of a duty imposed upon him by law in behalf of the safety of the public, or for the breach of a nonassignable duty, or for the breach of an inescapable duty owed the public." *Id.* at 22, 585 S.E.2d at 22 (citing *Summers v. Crown Construction Company*, 453 F.2d 998, 999 (4th Cir. 1972)).

Here, WVDCR had an inescapable duty to the patients in its care. And Wexford was acting as WVDCR's agent pursuant to a medical services contract. As the state agency tasked with providing incarcerated people within its custody with constitutionally adequate medical care, and further tasked with ensuring that the rights of said prisoners under civil rights statutes are not violated (including the ADA and RA), WVDCR could not simply assign the duty to Wexford. *See Baxley v. Jividen*, 508 F. Supp. 3d 28, 57 (S.D.W. Va. 2020) (State agency cannot abdicate duty to provide medical care by simply deferring to its medical contractor); *see also Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 602 (4th Cir. 2010) (entity's obligations under the ADA are "nondelegable"); Ex. 2, (Minnix Dep.) at 182-85 (acknowledging that WVDCR ADA Coordinators play a role in ensuring reasonable accommodations for people with disabilities including OUD). While WVDCR could delegate individual medical determinations to Wexford, it is not permitted to wholly abdicate its obligations under federal law to ensure certain basic minimums are met, including preventing discrimination against people in its custody based on disability. Under these circumstances, the private contractor exception to liability based on respondeat superior does not apply. The evidence in this record instead plainly supports a finding that Wexford's conduct is attributable to WVDCR.

Because WVDCR is liable for Wexford's violations of the ADA and RA under the doctrine of respondeat superior and because the record clearly establishes that Wexford violated Plaintiff's rights under the ADA and RA, WVDCR is not entitled to summary judgment.

### e. WVDCR's own acts of discrimination are sufficient to demonstrate that discrimination was the motivating factor in WVDCR's denial of MOUD.

Even if this Court concludes that Wexford's discriminatory acts are not attributable to WVDCR under the theory of respondeat superior, the record is replete with examples of WVDCR's own discriminatory acts, including its knowledge of Wexford's discrimination and its

9

indifferent inaction to take any steps to prevent discrimination based on disability with regard to treatment of people with OUD.

First, there is no dispute that WVDCR had an obligation to provide treatment for incarcerated people with OUD. Dr. Amjad testified that "[WVDCR] ha[s] to provide all available services for opioid use disorders per basic standards of care." Dkt. 194-2 (Amjad Dep.) at 28:5-10. WVDCR's contention that "WVDCR does not have any input as to how Wexford administers MOUD," is plainly belied by the record. Dkt. 187 at 8. As explained *supra*, Wexford moves patients off Suboxone and onto Subutex per a "directive" of WVDCR—not Wexford. *See* Section IV.A.1.c, *supra*.

WVDCR concedes that OUD is a disability, and that MOUD is the only accommodation available for that disability. Ex. 2. at 174-75; 195-196. Nevertheless, in January 2023, WVDCR was not making MOUD available to all incarcerated patients with OUD, and instead had a discriminatory practice of refusing to start incarcerated patients on MOUD unless they (1) were pregnant, or (2) had a verified "active" prescription. Dkt. 188-14, at P000280, P0000284. The basis for this discriminatory practice originated with the WVDCR–Wexford contract—one expressly approved by WVDCR—which specified that "[w]hen an individual who is confirmed to already be undergoing MAT [Medication Assisted Treatment] enters the DCR system, Wexford Health will contact the provider/clinic who prescribed the MAT in order to confirm the dosage and determine the plan of care while the patient is in DCR custody. *Id.* at P000284. If Wexford confirmed that the patient was receiving MOUD, then under the contract with WVDCR, Wexford agreed to continue the treatment. *Id*.

Not only was WVDCR's established practice discriminatory in its own right (by knowingly refusing to accommodate incarcerated patients with OUD who were not already receiving

10

MOUD), WVDCR knew that even this contractual agreement to continue MOUD for those who arrived with current prescriptions was not being implemented with fidelity by Wexford. For example, WVDCR's own documentation demonstrates that in the year prior to Mr. Taylor's incarceration, 64.7 percent of nonpregnant patients who were receiving MOUD at time of admission were *discontinued* from their medication. Ex. 3 at WVDCR9851. In total, Defendants forced over 1300 people incarcerated in WV facilities off of MOUD in 2022 and 2023.[1] *Id*. This does not account for people with OUD who needed treatment and did not receive it. Courts have found that "[a]bsent medical or individualized security considerations underlying the decision to deny access to medically necessary [MOUD] treatment, Defendants' policy . . . is either 'arbitrary or capricious-as to imply that it was pretext for some discriminatory motive' or 'discriminatory on its face.'" *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 47 (D. Mass. 2018 (quoting *Kiman v. N.H. Dep't of Corr*., 451 F.3d 274, 284 (1st Cir. 2006)).

Finally, WVDCR failed to monitor Wexford's implementation of its MOUD/MAT programs for patients with OUD, in contrast to its monitoring of other medical services. Dr. Amjad was asked: "Outside of guidelines, has DCR reviewed Wexford's practice of screening and documenting opioid dependence or opioid use disorder for compliance with the contract?" Dkt, 194-2 at 50:10-13. Dr. Amjad replied: "We have looked at them as a case-by-case basis when something comes up, but have not developed a report or tracking system as we have with the other compliances that we've been looking at." *Id*. at 50:14-17. Amjad further testified WVDCR did not monitor Wexford's verification of patient's MOUD or continuity of care. *Id*. at 48:4-7.

---

[1] As previously noted, WVDCR's own data appears to be over-counting the number of incarcerated individuals who did receive MOUD, given that WVDCR's data states that Mr. Taylor himself was continued on MOUD, when it is undisputed that he was not.

11

In light of the evidence of record, WVDCR cannot show that the record mandates judgment in its favor as to whether discrimination based on disability was a motivating factor in Defendants' denial of MOUD to Mr. Taylor. To the contrary, the record indicates there is no dispute that WVDCR discriminated against Mr. Taylor on account of his OUD, and in so doing, violated the ADA. WVDCR's motion for summary judgment on this basis should be denied.

### 2. Mr. Taylor qualifies for ADA Title II protections under the "drug rehabilitation" exemption.

There is no dispute that OUD is a disability under the ADA, *see, e.g.*, Dkt. No. 194-2, (at 61; Ex. 2 at 180, and indeed, this Court has already found OUD to be a disability under the ADA. *See* Dkt. 65 at 9. WVDCR, however, alleges that Mr. Taylor "is not entitled to the protections under the ADA as a matter of law due to [his] illegal and current drug use." Dkt. No. 187 at 15. Again, WVDCR ignores the law—specifically the ADA's drug rehabilitation exemption, which states that "an individual shall not be denied health services, or services provided in connection with drug rehabilitation, *on the basis of the current illegal use of drugs* if the individual is otherwise entitled to such services." 42 U.S.C. § 12210(c) (emphasis added).

Mr. Taylor does not deny that he has suffered relapses during his rehabilitation from his OUD. But he falls squarely into the § 12210(c) exemption: he sought health services and other rehabilitation services to which he was otherwise entitled from WVDCR. In its memoranda, WVDCR does not provide a single case related to a claim for health services or services provided in connection with drug rehabilitation, or any case that discusses the § 12210(c) exemption.[2]

---

[2] *See Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d 274 (4th Cir. 1997) (finding defendant hospital did not violate the ADA when it fired plaintiff for her current use of illicit substances). *Lyons v. Johns Hopkins Hosp.*, 712 Fed. Appx. 287 (4th Cir. 2018) (finding defendant hospital did not violate the ADA when it fired plaintiff for his use of cocaine).

Defendant also cites to numerous cases from sister Circuits, that are inapposite. *See Zenor v. El Paso Healthcare Systems, Ltd.* 176 F.3d 847 (5th Cir. 1999) (finding defendant did not violate

12

WVDCR has failed to meaningfully dispute the fact that Mr. Taylor remains squarely under the protection of Title II of the ADA. *See, e.g., RHJ Med. Ctr., Inc. v. City of DuBois,* 754 F. Supp. 2d 723, 750 (W.D. Pa. 2010).

### B. WVDCR cannot show it is entitled to summary judgment on Plaintiff's RA claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). WVDCR argues that "[t]he gist of Plaintiff's Amended Complaint is essentially the same alleged facts set forth in his ADA claim," and that "his Rehabilitation Act claims must fail because there was no discrimination by the WVDCR." Dkt. No. 187 at 17.

As the Fourth Circuit has made clear, claims under the ADA's Title II and the Rehabilitation Act differ only in the federal funding requirement and "with respect to the third element, causation." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (cleaned up). Defendant WVDCR does not dispute that it receives federal funding.

"To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded solely by reason of his disability; the ADA requires only that the disability was a

---

the ADA when it fired plaintiff for his use of illicit drugs); *Salley v. Circuit City Stores*, 160 F.3d 977 (3rd Cir. 1998) (finding plaintiff was fired for his misconduct, a legitimate, non-discriminatory reason);. *Quinones v. Univ. of P.R.*, 2015 U.S. Dist. LEXIS 18319 (Puerto Rico Dist. Ct. Feb. 13, 2015) (finding defendant university had not violated the ADA when it dismissed plaintiff from its residency program based on her current drug use); *Mauerhan v. Wagner Corp.*, 649 F.3d 1180 (10th Cir. 2011) (finding defendant corporation did not violate the ADA when it fired plaintiff and later told him it would not allow plaintiff to return to work at the same level of compensation he previously received); *Brown v. Lucky Stores*, 246 F.3d 1182 (9th Cir. 2001) ((finding defendant did not violate the ADA when it fired plaintiff after she was absent for three days following her arrest for drunk driving and possession of illicit drugs).

13

motivating cause of the exclusion." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461-62 (4th Cir. 2012) (citations omitted). Mr. Taylor has produced material evidence that not only did WVDCR discriminate against him, but that it did so *soley* by reason of his disability.

Here, as set forth in Pl.'s Fact Section III.A.1, the evidence of record is plain: despite WVDCR's obligation to provide medical treatment to incarcerated people, it decided to take no action to ensure that incarcerated patients with OUD were provided treatment for their disease, even while ensuring that those with other diseases and medical conditions did receive treatment. Further, WVDCR treats accommodations for incarcerated people with OUD differently from the way in which it accommodates other disabilities. No medical justification exists for refusing MOUD to people with OUD, or for forcing people with OUD to suffer forced withdrawal, or for requiring participation in mandatory behavioral health programs before being prescribed MOUD, and no evidence exists to provide a non-discriminatory justification for WVDCR's policies. Accordingly, WVDCR's motion for summary judgment on Mr. Taylor's RA claim should be denied.

## V. CONCLUSION

WHEREFORE, for the reasons stated herein, Mr. Taylor respectfully requests that this Honorable Court deny WVDCR's motion for summary judgment in its entirety.

> **Respectfully submitted,**
> **JOSEPH TAYLOR,**
> **Plaintiff, by and through Counsel,**

/s/ Lesley M. Nash
Lydia C. Milnes (WVSB #14158)
Lesley M. Nash (WVSB #10598)
Mountain State Justice, Inc.
1029 University Ave., Ste, 101
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 344-3145

lydia@msjlaw.org
lesley@msjlaw.org

Sarah Grady (IL Bar No. 6312933) (Pro Hac Vice)
David Howard Sinkman (NY Bar No. 4684981) (Pro Hac Vice)
Amelia Caramadre (MA Bar No. 710230) (Pro Hac Vice)
Nabihah Maqbool (NY Bar No. 5717400) (Pro Hac Vice)
Kaplan & Grady LLC
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
Phone: (312) 852-2184
Facsimile: (312) 626-6715
sarah@kaplangrady.com
sinkman@kaplangrady.com
amelia@kaplangrady.com
nabihah@kaplangrady.com