IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSEPH TAYLOR,

            Plaintiff,

v.                                         CIVIL ACTION NO.   2:23-cv-00475

WEXFORD HEALTH SOURCES,
INCORPORATED, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed several motions in limine filed by each party in this matter, and provides the rulings set forth below.

**DEFENDANTS' MOTIONS**

    1.    Document 212

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Plaintiff's Argument, Theory of Case, or Testimony Asserting that the Defendants' MOUD Policy Was "If You Did Not Have An Active MOUD Prescription At the Time of Incarceration, Then You Were Precluded from Receiving MOUD Treatment* (Document 212) and the *Plaintiff's Consolidated Response to Defendants' Joint Motions in Limine 1-8* (Document 227) (hereinafter, Pl.'s Resp.). The Defendants argue that the evidence establishes that Wexford's guidelines for treatment of OUD (opioid use disorder) called for an individualized approach, and providers could start MOUD (medication for opioid use disorder) for a patient who did not have an active prescription on intake

if the provider believed it to be medically indicated. Therefore, they request that the Court preclude the Plaintiff from arguing or introducing testimony that the Defendants' policy was to provide MOUD only if patients arrived with an active prescription.

The Plaintiff argues that the Defendants seek to improperly relitigate the motions for summary judgment and ask the Court to resolve a factual dispute, rather than an evidentiary issue, through this motion in limine.

The Court finds that the motion seeks resolution of a disputed factual issue, as more fully discussed in the Court's opinion resolving the motions for summary judgment. Therefore, the Court **ORDERS** that *Defendants' Joint Motion in Limine to Preclude Plaintiff's Argument, Theory of Case, or Testimony Asserting that the Defendants' MOUD Policy Was "If You Did Not Have an Active MOUD Prescription at the Time of Incarceration, Then You Were Precluded from Receiving MOUD Treatment* (Document 212) be **DENIED**.

2. Documents 213 and 218

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Lay Witnesses from Offering Medical Opinions at Trial* (Document 213), the *Defendants' Joint Motion in Limine to Preclude Any Testimony or Argument That Plaintiff Overdosed After He Was Released from Central Regional Jail* (Document 218) and the Plaintiff's Response. The Defendants argue that some of the Plaintiff's statements in his deposition, such as his testimony that he was withdrawing from Suboxone when he was admitted to CRJ (Central Regional Jail) and that he overdosed on opioids following his release, require medical expertise. They also contend that the Plaintiff's expert lacks a sufficient basis to testify regarding the Plaintiff's alleged overdose.

The Plaintiff argues that the rules permit him to testify as to his own experiences in going through withdrawal and suffering an overdose, and also permit his wife to testify about observing his overdose and reviving him. He emphasizes that the proposed testimony would be based on the witnesses' personal knowledge, and recognizing symptoms of drug overdose is within the knowledge of a lay person. The Plaintiff further argues that Dr. Fingerhood's opinion is adequately supported, and that Dr. Mitcheff's declaration, dated May 10, 2024, should be stricken because it is untimely, covers a subject that was not properly disclosed pursuant to Rule 26(a)(2), does not satisfy Rule 702, lacks supporting methodology and citations, and would cause prejudicial surprise.

The Court finds that the Plaintiff and other witnesses should be permitted to testify as to their own experiences and matters within their personal knowledge, including withdrawal and overdose. Withdrawal and overdose are within the knowledge of laypeople, particularly laypeople with a history of OUD or a close relationship with someone with OUD. Any objections as to foundation can be made during trial, and the Defendants may challenge testimony on cross-examination. The Court would note, however, that such testimony must be limited to that within the knowledge of the witnesses. The Plaintiff has referred to the alleged overdose, for which he did not receive professional medical care, as "near-fatal," which, absent further evidence establishing a foundation, may be outside the scope of knowledge of a layperson. Following careful consideration, the Court **ORDERS** that the *Defendants' Joint Motion in Limine to Preclude Lay Witnesses from Offering Medical Opinions at Trial* (Document 213) and the *Defendants' Joint Motion in Limine to Preclude Any Testimony or Argument That Plaintiff Overdosed After He Was Released from Central Regional Jail* (Document 218) be **DENIED**.

3. Document 214

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Plaintiff from Arguing at Trial That Defendants Maintain a Policy of Not Prescribing Medications for Opioid Use Disorder in Order to Save Money* (Document 214) and the Plaintiff's Response. The Defendants argue that "[t]here is no evidence to support the allegations that Defendants financially benefit by not providing inmates with MOUD and therefore force inmates with OUD, including those already being treated with MOUD, into withdrawal." (Defs.' Mot. at 3) (Document 214.)

The Plaintiff concurs in this motion and contends that the Defendant should likewise be precluded from introducing evidence or argument regarding the financial motivations underlying the defendants' MOUD policies.

Accordingly, the Court **ORDERS** that the *Defendants' Joint Motion in Limine to Preclude Plaintiff from Arguing at Trial That Defendants Maintain a Policy of Not Prescribing Medications for Opioid Use Disorder in Order to Save Money* (Document 214) be **GRANTED** as unopposed.

4. Document 215

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Testimony That Plaintiff Was Withdrawing from Suboxone When He Entered Custody* (Document 215) and the Plaintiff's Response. The Defendants argue that the Plaintiff should not be able to testify as to what substance(s) caused his alleged withdrawal symptoms, and that his expert, Dr. Fingerhood, lacks a reliable basis for any testimony that he was in withdrawal from Suboxone as opposed to other substances.

The Plaintiff contends that "the nature, cause, and severity of Mr. Taylor's opioid withdrawal is a fact question that belongs to the jury." (Pl.'s Resp. at 19.) He states that he does

not contend that his withdrawal symptoms were solely from the termination of Suboxone prescription, and withdrawal from multiple controlled substances does not preclude the admission of evidence that he suffered from Suboxone withdrawal. In addition, he argues that his years of experience with opioid use, treatment, and withdrawal provides a foundation for lay opinion testimony regarding his experience. Ultimately, the Plaintiff contends that cross-examination, rather than exclusion, is the appropriate method of challenging the evidence regarding the Plaintiff's alleged withdrawal from Suboxone.

The Court finds that the factual dispute regarding the extent of Mr. Taylor's withdrawal symptoms, the extent to which those symptoms were attributable to Suboxone, and whether MOUD should have been prescribed to alleviate those symptoms, cannot properly be resolved on a motion in limine. Therefore, the Court **ORDERS** that the *Defendants' Joint Motion in Limine to Preclude Testimony That Plaintiff Was Withdrawing from Suboxone When He Entered Custody* (Document 215) be **DENIED**.

   5. Document 216

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Plaintiff from Presenting Argument that Non-Receipt of Medication for Opioid Use Disorder While Incarcerated Caused Him to Relapse After Release* (Document 216) and the Plaintiff's Response. The Defendants contend that the Plaintiff's relapse prior to incarceration casts doubt on any link between the failure to prescribe MOUD and his post-release relapse. They also argue that there is no basis to attribute a particular instance of relapse to treatment methods.

The Plaintiff argues that there is substantial evidence of a heightened risk of relapse and overdose upon release when people with OUD are not treated with MOUD in jail, including

evidence and testimony from the Defendants' employees. He argues that the Defendants can properly challenge causation and damages related to the overdose through contrary evidence and cross examination, but that there is no basis for excluding the evidence at issue.

To the extent the Plaintiff has otherwise admissible evidence related to the causation of his post-incarceration relapse and alleged overdose, the Court finds that such evidence should be permitted. The Plaintiff's expert may provide relevant evidence as to causation. The Plaintiff may testify as to his history with MOUD, his experience with opioid use, relapse, overdose, and cravings. If he is able to lay an appropriate foundation, he could be permitted to testify as to a causal relationship between the denial of MOUD and his relapse, but the Court directs that any such testimony be offered in a way that permits an objection and ruling as to foundation prior to introduction of the challenged testimony. Following careful consideration, and as set forth in more detail herein, the Court **ORDERS** that the *Defendants' Joint Motion in Limine to Preclude Plaintiff from Presenting Argument that Non-Receipt of Medication for Opioid Use Disorder While Incarcerated Caused Him to Relapse After Release* (Document 216) be **DENIED**.

6.  Document 217

The Court has reviewed the Defendants' *Motion in Limine to Preclude Argument that Plaintiff Had an 'Active' Suboxone Prescription When He Entered Custody at Central Regional Jail, or that the Defendants 'Removed' Him from His Suboxone Prescription* (Document 217) and the Plaintiff's Response. The Defendants argue that the evidence clearly shows that the Plaintiff's seven-day prescription for Suboxone, issued on December 20, 2022, was not active when he entered custody on January 1, 2023.

The Plaintiff argues that he should be permitted to offer evidence from Dr. Fingerhood and Dr. Michael, his expert and his former treating physician, regarding their understanding of the term "active prescription" and its medical usage (or non-usage). He argues that this issue, too, involves a factual dispute to be resolved by the jury.

Following careful consideration, the Court **ORDERS** that the Defendants' *Motion in Limine to Preclude Argument that Plaintiff Had an 'Active' Suboxone Prescription When He Entered Custody at Central Regional Jail, or that the Defendants 'Removed' Him from His Suboxone Prescription* (Document 217) be **DENIED**. The Plaintiff is free to present evidence contrary to the Defendants' position.

7. Document 219

The Court has reviewed the *Defendants' Joint Motion in Limine to Preclude Reference to Inmate Grievance Logs Unless and Until the Same Are Admitted into Evidence* (Document 219) and the Plaintiff's Response. The Defendants argue that there should be no discussion of the Grievance Logs until they are admitted into evidence in accordance with the rules of evidence.

The Plaintiff argues that the grievance logs are important records that help establish the Defendants' pattern and practice of discontinuing patients from MOUD, and that Dr. Fingerhood reviewed the records in formulating his expert report and should therefore be permitted to discuss them. He contends that they are admissible business records, containing information submitted for the purpose of obtaining medical treatment, and are therefore admissible for both the truth of the matters asserted and to show that the Defendants had notice of the harmful effects of denying MOUD to detainees without 'active' prescriptions.

The Defendants do not argue substantively that the Court should find that the grievance logs are not admissible at this stage. The Defendants' motion appears to be focused on preventing reference to the grievance logs in opening statements, and in reference to the Plaintiff's expert. The Plaintiff may use opening statements to preview evidence that they reasonably believe will be admitted. The Plaintiff's expert may discuss materials used to produce his report. Therefore, the Court **ORDERS** that the *Defendants' Joint Motion in Limine to Preclude Reference to Inmate Grievance Logs Unless and Until the Same Are Admitted into Evidence* (Document 219) be **DENIED**.

## PLAINTIFF'S MOTIONS

The Court has reviewed the *Plaintiff's Motions in Limine No. 1-14* (Document 222) and the *Defendants' Joint Response to Plaintiff's Motions in Limine No. 1-14* (Document 228).

1. First Motion

The Plaintiff seeks to bar evidence of his convictions, arrests, and disciplinary history, asserting that only the fact that he is a convicted felon should be admitted under Rule 609 and Rule 403. The Defendants argue that his criminal record is admissible. They contend that his felony conviction(s) are admissible pursuant to Rule 609(a)(2), that the fact of his incarceration and conviction is a necessary element of his claim, and that his criminal record is relevant to damages. They do not oppose the motion to the extent it requests exclusion of other criminal history. They argue that his disciplinary history subsequent to the relevant time period that relates to diversion of MOUD could prove relevant and ask the Court to hold the motion in abeyance on that portion of the motion.

Rule 609(a)(1)(A) of the Federal Rules of Evidence provides that a witness's character for truthfulness may be attacked through evidence of a conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year," subject to Rule 403. Thus, the Court finds that the Defendants should be permitted to question the Plaintiff on cross examination about the existence of criminal convictions for felony offenses that occurred within ten years, pursuant to Rule 609. However, the Court cautions counsel against delving into the underlying factual specifics of the Plaintiff's prior convictions, which could increase the risk of prejudice, confusion, and wasting time. The Court finds that criminal history that is not admissible under Rule 609 should be precluded, as should disciplinary history from periods of incarceration. The Court **ORDERS** that the Plaintiff's first motion in limine be **GRANTED in part and DENIED in part**, as set forth herein.

2. *Second Motion*

The Plaintiff next seeks to bar jail and prison kiosk messages post-dating the events in the complaint. The Defendants argue that certain messages specifically discussing this lawsuit may be relevant, and request that the Court hold the motion in abeyance.

The Court finds that messages post-dating the events in the complaint have little relevance to the claims presented, pursuant to Federal Rule of Evidence 401, and **ORDERS** that the Plaintiff's second motion in limine be **GRANTED**.

3. *Third Motion*

The Plaintiff further seeks to bar reference to convictions, arrests, or bad acts of his witnesses. He argues that the Defendants failed to disclose any such convictions during the discovery process, arrests that did not result in conviction are inadmissible, and prior bad acts

evidence would be irrelevant to the proposed testimony. The Defendants do not oppose this motion. The Court therefore **ORDERS** that the Plaintiff's third motion in limine be **GRANTED** as unopposed.

### 4. Fourth Motion

The Plaintiff next seeks to bar speculative testimony about accommodations and medical care that 'would have been' provided to the Plaintiff. He notes that witnesses who indicated that they do not have specific recollections of his treatment at CRJ have offered testimony that they would have taken certain steps if Mr. Taylor required certain care or exhibited certain symptoms. Specifically, the Plaintiff indicates that Nurse Practitioner Tamara Kessel testified that she "would have contacted an addiction specialist for Mr. Taylor if his medical needs required MOUD," though she had no recollection of interacting with Mr. Taylor during his January through March 2023 detention. (Pl.'s Mot. at 14) (Document 222.) The Plaintiff argues that this evidence would be mere speculation.

The Defendants argue that their policies, procedures, and customs are at issue in this case, and they therefore should be permitted to testify as to their ordinary practices. They further contend that they should be permitted to lay a foundation pursuant to Rule 406 to admit habit evidence so that Ms. Kessel can testify that she acted in accord with her practice.

The Defendants' policies and practices are at issue in this case. The admissibility of evidence regarding habit or routine practice to show that the person or organization acted in accordance with the habit or practice pursuant to Rule 406 will depend on the foundation and context of the proposed testimony. "Habit evidence…can also be established by a witness's direct testimony of his general practice." *Howard v. City of Durham*, 68 F.4th 934, 951 (4th Cir. 2023).

The Fourth Circuit explained that, presented with evidence of a witness's general practice or routine, a jury may infer that the witness acted in accordance with that practice—or that the witness did not follow that practice on the occasion at issue, or that no such practice existed. *Id.* "[T]he weight to give this competing testimony is a credibility issue that should be left to the jury." *Id.* at 951-52. In order to allow the Court to evaluate the contested testimony in context, the Court **ORDERS** that the Plaintiff's fourth motion in limine be **HELD IN ABEYANCE**.

5. *Motion Five*

The Plaintiff asks the Court to bar any argument that an inference should be drawn against the Plaintiff because third parties are absent at trial, as any such witnesses are not within the Plaintiff's exclusive power to produce. The Defendants do not object to this motion. Therefore, the Court **ORDERS** that the Plaintiff's fifth motion in limine be **GRANTED** as unopposed.

6. *Motion Six*

The Plaintiff further seeks to bar any undisclosed witnesses. The Defendants do not object to this motion. Therefore, the Court **ORDERS** that the Plaintiff's sixth motion in limine be **GRANTED** as unopposed.

7. *Motion Seven*

The Plaintiff next seeks to preclude undisclosed and improper Rule 26(a)(2)(C) expert opinions. He asks the Court to prevent the Defendants from soliciting opinion testimony from treating providers who have not been disclosed to offer expert opinions, to bar undisclosed opinions from Tamara Kessel, and to bar improper opinion testimony from Dr. Michael Mitcheff. They contend that Ms. Kessel should be permitted to testify as to opinions she reached during the course of her treatment of Mr. Taylor, but not other expert opinions. In addition, they argue that

11

Dr. Mitcheff should not be permitted to testify that the Plaintiff's treatment was medically appropriate or that he was not experiencing withdrawal from buprenorphine because he had no involvement with the Plaintiff's treatment during the relevant timeframe and did not provide a Rule 26(a)(2)(B) report.

The Defendants indicate that they do not intend to offer expert opinions from non-disclosed witnesses but reserve the right to do so if the Plaintiff opens the door. They argue that Ms. Kessel's proposed testimony is appropriate based on her knowledge, skill, experience, training, and education, and the fact that she was a treating provider. They contend that the Plaintiff's motion does not sufficiently identify the opinions he seeks to exclude. They also argue that Dr. Mitcheff is "qualified to testify as to the standard of care pertaining to the treatment of OUD in a correctional setting and how this standard of care translates into Wexford's guidelines" and can "opine as to whether the treatment rendered to Plaintiff fell within Wexford's guidelines." (Defs.' Resp. at 9.)

The Court finds that undisclosed expert testimony is properly excluded. It is not clear that there is any dispute with regard to the permissible scope of Ms. Kessel's testimony. The Court notes that the Defendants did not present Dr. Mitcheff as an expert witness, and testimony outside the scope of his role as a 30(b)(6) representative will be excluded. During his deposition, counsel for the Defendants vehemently objected to questions outside the scope of the Rule 30(b)(6) notice. When counsel for the Plaintiff asked, "Can withdrawal from MOUD be dangerous?" counsel for Wexford objected and instructed him not to answer, stating "He's…not an expert witness. He's here to testify on Wexford's policies and procedures and the things that went into creating their guideline. That is – that is a question for an expert witness, and I'm instructing him not to

12

answer." (Mitcheff Dep. at 84::9-18) (Document 195-3.) While the parties remain able to offer objections as to the specific scope of testimony by treating providers and Dr. Mitcheff, the Court **ORDERS** that the Plaintiff's seventh motion in limine be **GRANTED** to the extent it seeks exclusion of expert testimony that was not properly disclosed.

       8. *Motion Eight*

In his eighth motion in limine, the Plaintiff seeks to bar reference to the fact that some of his attorneys are from out of town. The Defendants indicate that they do not intend to suggest that the Plaintiff or his attorneys should be viewed as outsiders but contend that the jury will need to be informed of Kaplan & Grady's office location for voir dire. The Court agrees that the office location will need to be referenced in voir dire but is otherwise irrelevant and should not be discussed. Therefore, the Court **ORDERS** that the Plaintiff's eighth motion in limine be **GRANTED**, without opposition, as set forth herein.

       9. *Motion Nine*

The Plaintiff's ninth motion in limine seeks to bar any appeal to the jurors' interests as taxpayers. The Defendants do not oppose this motion. Therefore, the Court **ORDERS** that the Plaintiff's ninth motion in limine be **GRANTED** as unopposed.

      10. *Motion Ten*

The Plaintiff next requests that the Court bar the Defendants from referring to the Plaintiff or other witnesses by labels other than their names, such as inmate, felon, addict, etc. The Defendants do not oppose this motion. Therefore, the Court **ORDERS** that the Plaintiff's tenth motion in limine be **GRANTED** as unopposed.

*11. Motion Eleven*

The Plaintiff's eleventh motion in limine requests that evidence or argument about after-acquired evidence unknown to medical providers at the time they treated Mr. Taylor be excluded. He argues that the Defendants should not be permitted to present evidence or argument about pre-incarceration lapses or non-conformances with his MOUD prescription or use of illicit substances that were not known to providers during his January-March 2023 incarceration. Likewise, he argues that evidence of the same from after the overdose he suffered in the few days following his release should be excluded. He argues that there is no permissible use for evidence of his drug use prior to December 2022 and after his March 2023 overdose.

The Defendants argue that the Plaintiff's drug screen upon intake, in which he tested positive for amphetamines, methamphetamines, and fentanyl, and did not test positive for buprenorphine, together with his admission of use, placed staff on notice of his pre-incarceration drug use. They further argue that his pre-incarceration relapse and non-compliance with his MOUD prescription is relevant to his claim that failure to prescribe MOUD proximately caused his post-incarceration relapse. The Defendants further argue that his pre- and post-incarceration illegal drug use and nonconformity to his MOUD are admissible as evidence of comparative fault.

Evidence of the Plaintiff's drug use and MOUD compliance that was not known to the providers at the time they made any decisions regarding his treatment is not relevant to any claim or defense and would be prejudicial and misleading to the jury pursuant to Rule 403. Facts that providers were aware of, including his drug screen on intake, are admissible, however. The Defendants' argument regarding comparative fault is addressed in detail below. Following

careful consideration, the Court **ORDERS** that the Plaintiff's eleventh motion in limine be **GRANTED** as set forth herein.

### 12. Motions Twelve and Thirteen

The Plaintiff next seeks to bar reference to the supplier of illicit substances to Mr. Taylor. He argues that who provided him with any illicit substances is irrelevant to his claims and any defense. He further seeks to preclude any arguments against the Defendants' liability that are contrary to law, including any argument by DCR that it is not liable because the actions at issue were taken by Wexford employees, and any argument by Wexford based on proportional fault concepts.

Defendant DCR argues that it should be permitted to argue and provide evidence that it was not involved in the medical decision-making at issue, and "it will be up to the jury to decide whether a co-defendant's conduct is to be imputed to the WVDCR or if the WVDCR's conduct itself was discriminatory." (Defs.' Resp. at 14.) The Defendants further contend that they should be permitted to present evidence and argument that the individual who provided him with heroin proximately caused his relapse and alleged overdose. They argue that West Virginia's statute regarding non-party fault, W. Va. Code § 55-7-13d(a), is not limited to state-law claims.

The Court finds that W. Va. Code § 55-7-13d is not applicable to the federal claims presented herein. *See*, *Isner v. City of Elkins,* No. 2:21-CV-27, 2022 WL 1750630, at *6 (N.D.W. Va. May 31, 2022) ("the West Virginia Legislature cannot limit Plaintiff's recovery under 42 U.S.C. § 1983, a federal statute"). Thus, non-party or comparative fault are not permissible issues, and the identity of the person who supplied controlled substances to Mr. Taylor is irrelevant to the claims and defenses. Therefore, the Court **ORDERS** that the Plaintiff's twelfth motion in

limine be **GRANTED**. As the Court discussed in more detail in ruling on the motions for summary judgment, vicarious liability is available in ADA and RA claims. It is not clear precisely what argument or evidence the Defendants might seek to introduce that the Plaintiff challenges as contrary to law. The Court finds that it will be helpful to hear evidence or argument of that nature in context, and therefore **ORDERS** that the Plaintiff's thirteenth motion in limine be **HELD IN ABEYANCE**.

*13. Motion Fourteen*

Finally, the Plaintiff asks the Court to permit him to appear at trial in non-prison attire and without restraints. The Defendants oppose this motion, arguing that the Plaintiff is currently serving a sentence following his felony conviction for receiving or transferring a stolen vehicle. They argue that "there is no inherent need for Plaintiff to deceive or camouflage himself before a jury" because his criminal case has been resolved. (Defs.' Resp. at 18.) They further argue that "his incarceration is the very essence of his claim against these Defendants," and any reference to him as 'inmate' or 'prisoner' is "inconsequential." (*Id.*)

The Court finds nothing deceptive or misleading in permitting the Plaintiff to appear without handcuffs and in street clothes or requiring that he be referred to by his name, like everyone else in the courtroom. The Defendant has presented nothing suggesting that the Plaintiff poses a threat or constitutes a flight risk, such that restraints would be necessary. Courts have long recognized that visible shackles are prejudicial and violate due process, in the absence of "a special need" during criminal trials. *Deck v. Missouri*, 544 U.S. 622, 626 (2005). In a civil trial where the claims presented make the jury aware that the Plaintiff is a prisoner, handcuffs are not as inherently prejudicial, though there remains a risk that the jury will interpret the handcuffs to

indicate that the plaintiff is "dangerous and violent." *Alexander v. Parks*, 834 F. App'x 778, 781 (4th Cir. 2020) (unpublished). Absent any special security considerations that may be brought to the Court's attention in the future, the Court **ORDERS** that the Plaintiff's fourteenth motion in limine be **GRANTED**, and that the Plaintiff be permitted to appear in non-prison attire, without restraints, and that he be referred to by name. Counsel for the Plaintiff will need to make arrangements with the United States Marshal Service to coordinate providing him with attire prior to court each day.

In addition to the motions in limine, the Court has reviewed the *Plaintiff's Motion for Leave to File Consolidated Replies in Support of Plaintiff's Motions in Limine* (Document 232), the attached *Plaintiff's Consolidated Replies in Support of His Motions in Limine* (Document 232-1), and the *Defendants' Response in Opposition to Plaintiff's Motion for Leave to File Consolidated Replies in Support of Plaintiff's Motions in Limine* (Document 235). The Plaintiff requested leave to file replies in order to respond to new arguments and clarify his positions. The Defendants argue that the Plaintiff did not demonstrate good cause to file replies, given that the Court's scheduling order provides that briefing on motions in limine typically ends with responses. The Court finds that replies to the motions in limine are not warranted. Therefore, the Court **ORDERS** that the Plaintiff's *Motion* (Document 232) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 21, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

17